732 F.2d 744
 1984-1 Trade Cases 65,982
 SOUTHWEST MARINE, INC., a California corporation, Plaintiff/Appellant,
v.
CAMPBELL INDUSTRIES, a California corporation; San Diego
Marine Construction Corp., a California corporation;
National Steel and Shipbuilding Co., a Nevada corporation;
Triple A Machine Shop, Inc., a California corporation; and
San Diego Unified Port District, a California corporation,
Defendants-Appellees.
SOUTHWEST MARINE, INC., a California corporation, Plaintiff-Appellee,
v.
CAMPBELL INDUSTRIES, a California corporation, et al., Defendants,
National Steel and Shipbuilding Co. and Triple "A" Machine
Shop, Inc., Defendants-Appellants.
 Nos. 81-5350, 81-5477.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 1, 1982.
Decided May 7, 1984.
As Amended July 11, 1984.
 
 David E. Lundin, Fredman, Silverberg & Lewis, San Diego, Cal., for plaintiff-appellant.
 James R. Sternberg, Sternberg, Eggers, Kidder & Fox, San Diego, Cal., Oliver Green, Paul, Hastings, Janofsky & Walker, Los Angeles, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of California.
 Before FLETCHER, NELSON, and REINHARDT, Circuit Judges.
 PER CURIAM:
 
 
 1
 A drydock facility in San Diego Bay was jointly operated by Campbell Industries, San Diego Marine Construction Corp., Atkinson Marine Corp., Triple A Machine Shop, Inc., and National Steel and Shipbuilding Co. Use of the dock was governed by a written agreement between these parties which restricted use to the signatories. Other companies were granted access to the dock only if they met certain requirements set forth in the User's Agreement.
 
 
 2
 Arthur Engel had been the general manager of Triple A at the time the User's Agreement was executed. He later left Triple A and became President and Chairman of the Board of Southwest Marine, a competing ship repair company. Southwest Marine was denied access to the dock pursuant to the User's Agreement.
 
 
 3
 Southwest Marine sued National Steel and Shipbuilding Co. and Triple A Machine Shop, Inc. for injunctive relief and damages, alleging a conspiracy in restraint of trade under section I of the Sherman Act, 15 U.S.C. Sec. 1 (1976). After the district court denied the request for injunctive relief, National Steel and Shipbuilding Co. voluntarily made the dock available to Southwest Marine through a series of partial assignments. The damages claim proceeded to trial. The jury, in a special verdict, found for Southwest Marine on the issue of liability, but also found that Southwest Marine was barred from recovering damages by its "truly complete involvement" in the formation of the illegal scheme. Southwest Marine moved for judgment notwithstanding the verdict. The district court denied the motion, entered judgment for the defendants, and denied Southwest Marine's motion for injunctive relief and related attorney's fees. Southwest Marine appeals from that denial. Appellees cross-appeal, claiming that because the jury was inadvertently exposed to inadmissible documents, they are entitled to a new trial if we hold for the appellants. Since there was insufficient evidence to support the jury's finding of truly complete involvement, we reverse and remand.
 
 TRULY COMPLETE INVOLVEMENT
 
 4
 To encourage private antitrust actions, the Supreme Court has refused to recognize the defense of in pari delicto in antitrust cases. Perma-Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 140, 88 S.Ct. 1981, 1985, 20 L.Ed.2d 982 (1968). The Perma-Life Court did not decide, however, whether "truly complete involvement and participation in a monopolistic scheme could ever be a basis, wholly apart from the idea of in pari delicto, for barring a plaintiff's cause of action." Id.
 
 
 5
 This court faced the unresolved issue of Perma-Life in Javelin Corp. v. Uniroyal, Inc., 546 F.2d 276 (9th Cir.1976), cert. denied, 431 U.S. 938, 97 S.Ct. 2651, 53 L.Ed.2d 256 (1977), holding that a plaintiff is barred from recovery in antitrust only when the illegal conspiracy would not have been formed but for the plaintiff's participation. This test is satisfied when the jury has found that the plaintiff's degree of participation is "equal to that of any defendant and a substantial factor in the formation of the conspiracy." Id. at 279.
 
 
 6
 Plaintiff Southwest Marine, as a corporate entity, was not at all involved in the formation of the User's Agreement. The jury found, however, that Southwest Marine was the alter ego of its president, Arthur Engel. To find Southwest Marine barred from recovering, therefore, the jury must have found that Arthur Engel's personal participation in the conspiracy's formation operated to implicate Southwest Marine indirectly. Given the narrow reach of the Javelin defense, we refuse to attribute Engel's acts as a former agent of Triple A to the corporation of which he is now President. We therefore find that Javelin does not bar Southwest Marine from recovering against appellees.
 
 ATTORNEY'S FEES
 
 7
 An antitrust plaintiff who "substantially prevails" in an action for injunctive relief is entitled to attorney's fees. 15 U.S.C. Sec. 26 (1976) (as amended). The district court improperly rejected Southwest Marine's petition for attorney's fees for services rendered in attempting to obtain injunctive relief.
 
 
 8
 The legislative history of the 1976 amendment to section 26 suggests that awards of attorney's fees are essential if private attorneys-general are to enforce the antitrust laws. See 1976 U.S.Code Cong. & Admin.News 2572, 2588-90. To permit defendants to avoid the award of attorney's fees in suits for injunctive relief by ceasing their illegal conduct would reduce the incentive to bring suit, thereby frustrating Congress's intent. Choose to apply the standard developed under 42 U.S.C. Sec. 1988 (1976) to awards.
 
 
 9
 A number of district courts that have examined the Section 16 attorney's fees provisions have considered the question whether it is proper to infer that Congress intended that the identical language in the section 16 and section 1988 attorney's fees provisions be identically construed. Each of these courts concluded that the "prevailing party" standard was the same under the two statutes. As the court in Grumman Corp v. LTV Corp., 533 F. Supp. 1385, 1387 (E.D.N.Y. 1982), explained, "it is more appropriate to presume that Congress intended [that] identical language found within the Section 16 and Section 1988 attorney's fees provisions, which were enacte by the same Congress, would be identically construed .... This conclusion is corroborated by the negative inference which we draw from an examination of a host of statutes where Congress has expressly imposed the requirement of a final judgment as a condition precedent for plaintiff's recovery of attorney's fees." See also F. & M. Schaefer Corp. v. C. Schmidt & Sons, Inc., 476 F. Supp. 203, 206 (S.D.N.Y. 1979) (relying on case law developed under section 1988 in ruling that "[t]he appropriate benchmarks in determining which party prevailed are a) the situation immediately prior to the commencement of the suit, and b) the situation today, and the role, if any, played by the litigation in effecting any changes between the two"); Harnischfeger Corp. v. Paccar, Inc., 503 F. Supp. 102, 104-5 (E.D. Wis. 1980) (relying on F. & M. Schaefer standard in ruling that a party which obtained a preliminary injunction preventing a corporate acquisition alleged to be in violation of the Clayton Act could be considered a prevailing party even though the court never issued a final judgment on the merits).
 
 
 10
 We have never decided the question whether it is appropriate to apply the standard developed under section 1988 to awards under section 16 of the Clayton Act, and we know of no circuit court that has specifically addressed this question. We do, however, find the reasoning in the cases cited above persuasive and choose to apply the standard for determining a "prevailing party" developed under section 1988 to awards under section 16.
 
 
 11
 Under 42 U.S.C. Sec. 1988 a plaintiff may be awarded attorney's fees if he is a "prevailing party." In American Constitutional Party v. Munro, 650 F.2d 184 (9th Cir.1981), we held that a plaintiff need not obtain formal relief to recover fees. Rather, for there to be a "prevailing party," there must simply be a causal relationship between the litigation brought and the practical outcome realized. Id. at 187; Pomerantz v. County of Los Angeles, 674 F.2d 1288, 1293 (9th Cir.1982). As a result of the action filed by plaintiff, the defendants decided to permit Southwest Marine to use the dock under an assignment from National Steel and Shipbuilding Co. Thus, whether or not plaintiff ultimately prevails on damages on remand, it has "prevailed" within the meaning of 42 U.S.C. Sec. 1988 (1976). See Maher v. Gagne, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980); Virginia Academy of Clinical Psychologists v. Blue Shield, 543 F.Supp. 126, 130 (E.D.Va.1982). The amount of fees ultimately awarded must await final disposition of the suit by the district court.
 
 CONCLUSION
 
 12
 That portion of the special verdict finding truly complete involvement on the part of Southwest Marine is set aside due to insufficient evidence. We remand to the district court to determine whether National Steel and Shipbuilding Co. and Triple A are entitled to a new trial on the issue of liability because the jury was exposed to documents that were not admitted into evidence. If the district court decides that a new trial is not required, Southwest Marine is immediately entitled to a determination of damages, and an award of attorney's fees commensurate with this judgment.
 
 
 13
 REVERSED and REMANDED.