350 S.E.2d 738

**The DAILY GAZETTE COMPANY, INC. a West Virginia Corporation**

v.

**Carl WITHROW, as Sheriff of Kanawha County, West Virginia.**

**No. 16642.**

Supreme Court of Appeals of West Virginia.

Nov. 20, 1986.

---

Rudolph L. Di Trapano, Rebecca A. Baitty, Charleston, for appellant.

Arthur T. Ciccarello, Charleston, for Withrow.

George Sharp, Kay, Casto & Chaney, Charleston, for bonding company.

McHUGH, Justice:

This action is before this Court upon appeal by the appellant, The Daily Gazette Company, Inc., a West Virginia corporation, from two final orders entered by the Circuit Court of Kanawha County, West Virginia (the trial court). The first order denied the appellant's request for certain injunctive relief against the appellee, Carl Withrow, as Sheriff of Kanawha County, under the provisions of this State's Freedom of Information Act, *W. Va. Code*, 29B–1–1 [1977], *et seq.* The trial court's second

order denied certain declaratory relief. This Court has before us the petition for appeal, all matters of record and the brief and oral argument of counsel for the appellant.

## I.

### A. THE FACTS

A former deputy sheriff of Kanawha County, West Virginia, brought a federal civil rights action against the appellee herein, Carl Withrow, then Sheriff of Kanawha County.[1] The complaint in the civil rights action alleged that Withrow, acting "individually" and as sheriff, had wrongfully discharged the former deputy sheriff from his job. The allegation was that Withrow had discharged the deputy to prevent him "from [pursuing] his official duties in the investigation of a crime and to punish and discourage [him] in the exercise of his right of free speech as guaranteed him under the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983."

This federal civil rights action and Withrow's counterclaim were dismissed as the result of a settlement between the parties. In its dismissal order the United States District Court for the Southern District of West Virginia noted that the parties and their counsel had agreed not to disclose the terms of the settlement. By an earlier order that court had determined that the file of the action was to be unsealed, with some exceptions not relevant to the present case before this Court.

The Daily Gazette Company ("the Gazette"), the appellant herein, requested in writing, pursuant to the provisions of this State's Freedom of Information Act, *W. Va. Code*, 29B–1–1 [1977], *et seq.*, that Withrow, as custodian of the records in the sheriff's office, make copies of, or allow inspection and copying of, any documents reflecting the terms of the settlement discussed above, as well as copies of any documents reflecting the terms of an earlier "confidential" settlement of a federal civil rights action against two sheriff's deputies employed by Withrow, involving a claim that those two deputies had beaten a county jail inmate.

Withrow responded to this request by a letter stating that there were no documents in his office relating to any lawsuit settlements from 1981 (when he took office) to the present. The Gazette thereafter requested in writing that the sheriff obtain copies of any such lawsuit settlement documents from the insurer, attorney or any other person having possession of the same.

By letter from counsel, Withrow refused to comply with the Gazette's second request. Withrow's counsel was of the opinion that the lawsuit settlement documents were not required by law to be maintained in the sheriff's records where no public funds had been expended as a result of the settlements. He also was of the opinion that such documents were not "public records" under this State's Freedom of Information Act where the documents were prepared by counsel for the sheriff or his deputies in their individual capacities.

The Gazette, pursuant to *W. Va. Code*, 29B–1–5 [1977], brought an action against Withrow, as custodian of the sheriff's records, requesting the following relief:

(1) an order enjoining the sheriff from withholding the requested records and ordering production of the same;

(2) a declaratory judgment that the sheriff is required at common law to maintain such records in his office for public inspection; and

---

**1.** The civil rights action was brought pursuant to 42 *U.S.C.* § 1983, as amended, which provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

(3) recovery of costs and reasonable attorney's fees.

The trial court conducted an evidentiary hearing. At the hearing the following facts were stipulated:

(1) in the federal civil rights action, the sheriff had been represented by two attorneys. One attorney had been employed by the sheriff "as an individual" and had not received any public funds for his legal services. Another attorney had been retained by the county's liability insurer to represent the sheriff "in his official capacity as Sheriff." For reasons not expressed, only the attorney representing the sheriff "as an individual" signed the sheriff's answer and counterclaim in the civil rights action;

(2) the settlement agreement was "proposed" by the attorney for the county's liability insurer "and also to some extent" by the attorney representing the sheriff individually; the agreement released the sheriff in his individual capacity and official capacity, and released the county's insurer from all claims by the plaintiff in the civil rights action;

(3) on the date of the hearing before the trial court, the written release was located in the office of the attorney representing the sheriff in his individual capacity;

(4) the sheriff did not retain in his own office any documents relating to any lawsuit settlement documents;

(5) the County Commission of Kanawha County had used public funds for payment of premiums for liability insurance which covered the sheriff as well as other county officials.

## B. THE TRIAL COURT'S RULINGS

By one order, the trial court denied the Gazette's request for injunctive relief. The court ruled that the release in the federal civil rights action against the sheriff had been "prepared by counsel retained by [Withrow] to represent him as an individual upon claims asserted against him in his individual capacity[,]" and was, therefore, "not a 'public document' which was 'prepared, owned and retained by a public body' within the meaning of W.Va.Code, 29B–1–2(4)." [2] The court also ruled that · the release in the federal civil rights action against the two sheriff's deputies had been prepared by counsel for the county's insurer and was never in the possession of the sheriff's office; accordingly, the release in that case was held not to be a "public document" within the meaning of *W.Va. Code,* 29B–1–2(4) [1977].

By a subsequent order, the trial court denied, without explanation on the record, the Gazette's request for a declaratory judgment recognizing a common law duty of the sheriff to maintain in his office a record of the settlement terms of any lawsuits brought against the sheriff or his employees in their official capacity, so that those documents would be available for public inspection and copying.

## II.

### A. THE STATE FOIA

■ The primary question in this case is whether releases or other litigation settlement documents in the possession of a public body's attorney or the public body's insurer's attorney are "public records" within the meaning of *W.Va.Code,* 29B–1–2(4) [1977] when such documents relate to the conduct of the public's business. The resolution of this question requires interpretation of this statutory provision, which is one of the disclosure, not exemption, provisions of this State's Freedom of Infor-

---

**2.** *W.Va.Code,* 29B–1–2(4) [1977] defines a "public record" to include "any writing containing information relating to the conduct of the public's business, prepared, owned and retained by a public body."

A "public body" is defined in *W.Va.Code,* 29B–1–2(3) [1977] to mean, *inter alia,* "every county ... governing body, ..., and any board, department, commission, council or agency thereof; and any other body which is created by state or local authority or which is primarily funded by the state or local authority." A county sheriff's department is clearly a "public body" under this definition. It is also clear that the appellee at all times relevant herein was the "custodian" of the sheriff's records. *W.Va.Code,* 29B–1–2(1) [1977] defines a "custodian" of a public record to mean "the elected or appointed official charged with administering a public body."

mation Act [hereinafter "the State FOIA"]. In syllabus point 4 of *Hechler v. Casey*, 175 W.Va. 434, 333 S.E.2d 799 (1985), this Court held that "[t]he disclosure provisions of this State's Freedom of Information Act, *W.Va.Code*, 29B–1–1 *et seq.*, as amended, are to be liberally construed, ... *W.Va. Code*, 29B–1–1 [1977]." [3]

## B. "PUBLIC RECORD": CONDUCTING "THE PUBLIC'S BUSINESS"

■ *W.Va.Code*, 29B–1–2(4) [1977] constitutes a liberal definition of a "public record" in that it applies to any record which contains information "relating to the conduct of the public's business," without the additional requirement that the record is kept "as required by law" or "pursuant to law," as provided by the more restrictive freedom of information statutes in some of the other states. *See* Braverman and Heppler, *A Practical Review of State Open Records Laws*, 49 Geo.Wash.L.Rev. 720, 733–35 (1981).

■ It is clear that a release or other litigation settlement document in which one of the parties is a public body, involving an act or omission of the public body in the public body's official capacity, is a "public record" within the meaning of a freedom of information statute, such as *W.Va.Code*, 29B–1–2(4), as amended, defining a "public record" as a writing which contains information "relating to the conduct of the public's business[.]" *See Register Division of Freedom Newspapers, Inc. v. County of Orange*, 158 Cal.App.3d 893, 901, 205 Cal. Rptr. 92, 96–97 (1984) (settlement documents in tort claim by county jail inmate alleging sheriff's negligence); *Dutton v. Guste*, 395 So.2d 683, 684–85 (La.1981) (set-tlement documents in action by state against architects and engineers concerning design and construction of a public building); *In re Geneva Printing Co. v. Village of Lyons*, 7 Media L.Rep. (BNA) 1220, 1222–24 (N.Y.Sup.Ct.1981) (settlement agreement in disciplinary proceeding by municipality against public employee); *News & Observer Publishing Co. v. Wake County Hospital System*, 55 N.C.App. 1, 12–13, 284 S.E.2d 542, 549 (1981) (settlement documents in action by medical professional associations against quasi-public county hospital system for wrongful termination of agreements), *petition for discretionary review denied*, 305 N.C. 302, 291 S.E.2d 151, *appeal dismissed for want of jurisdiction and cert. denied*, 459 U.S. 803, 103 S.Ct. 26, 74 L.Ed.2d 42 (1982). *See generally* annotation, *What Are "Records" of Agency Which Must Be Made Available Under State Freedom of Information Act*, 27 A.L.R.4th 680, § 16 (1984).

■ In holding that a litigation settlement document involving a public body in an official capacity contains information "relating to the conduct of the public's business," the courts have recognized that there are two types of public interests mandating disclosure of such a document as a "public record" under a state's freedom of information statute: (1) the public's right to know whether a public official or a public employee has been charged with official misconduct (and whether such charges have been tacitly admitted) and (2) the financial impact upon the public of a litigation settlement which is paid either with public funds or with insurance proceeds generated by publicly financed insurance premiums (which premiums are adjusted

---

3. *W.Va.Code*, 29B–1–1 [1977] contains this legislative declaration of policy for the State FOIA, including a policy that the State FOIA is to be liberally construed to promote disclosure:

Pursuant to the fundamental philosophy of the American constitutional form of representative government which holds to the principle that government is the servant of the people, and not the master of them, it is hereby declared to be the public policy of the State of West Virginia that all persons are, unless otherwise expressly provided by law, entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments of government they have created. To that end, the provisions of this article shall be liberally construed with the view of carrying out the above declaration of public policy.

based upon claims experience). For example, the court made these observations in *Miami Herald Publishing Co. v. Collazo,* 329 So.2d 333 (Fla.Dist.Ct.App.), *cert. denied,* 342 So.2d 1100 (Fla.1976):

> The record indicates the trial court, at the request of the parties, ordered that the terms of the settlement agreement, which implied liability on the part of the City of Miami for the actions of one of its police officers acting in his official capacity, were not to be made public. The only reasons shown in the record for not making the settlement terms public were the preference and agreement of the parties not to do so.... [A]ppellants' right to know the terms of the settlement agreement is particularly compelling here because of the nature of the issues being litigated, i.e., alleged police misconduct and improper police training involving a City of Miami police officer acting in his official capacity. These issues created a substantial monetary liability for the City and influenced its insurance rates for the future, which costs must be borne by the taxpayers. Moreover, the activities complained about are by their very nature newsworthy. It is particularly in matters such as these that freedom of communication should be kept open and that none of the real issues or facts become obscured.

329 So.2d at 338.

### C. "PUBLIC RECORD": ACTING IN AN OFFICIAL CAPACITY

█ A litigation settlement document contains information "relating to the conduct of the public's business," and is, therefore, a "public record" under the State FOIA when such document involves an act or omission of the public body in the public body's official capacity. That the litigation settlement document involves "personal," as well as "official," conduct of the public body does not vitiate the "public" nature of the document. The term "public record"

should not be manipulated to expand the exemptions to the State FOIA; instead, the burden of proof is upon the public body to show that one (or more) of the express exemptions applies to certain material in the document. *See Bureau of National Affairs, Inc. v. United States Department of Justice,* 742 F.2d 1484, 1494 (D.C.Cir. 1984).[4] Here, the appellee has not alleged or shown the applicability of any of the express exemptions to the State FOIA.

In the present case the lawsuits for which disclosure of the settlement terms have been sought were federal civil rights actions brought under 42 *U.S.C.* § 1983, as amended. The language of that statute, quoted *supra* at note 1, indicates that an essential element of an action thereunder is proof that the defendant acted under color of state law. There must be "state action." The statute "does not reach purely private conduct[.]" *District of Columbia v. Carter,* 409 U.S. 418, 424, 93 S.Ct. 602, 606, 34 L.Ed.2d 613, 620 (1973). Consequently, the appellee and his employees acted in their official capacity for the purpose of disclosure of the terms of the settlements of the civil actions based upon their acts under color of state law.

### D. "PUBLIC RECORD": "RETAINED BY A PUBLIC BODY"

█ In addition to containing information "relating to the conduct of the public's business," a writing must have been "prepared, owned and retained by a public body" in order to be a "public record" under *W.Va.Code,* 29B–1–2(4) [1977]. In this case the writings in question, the releases, were prepared by and in the possession of the appellee's attorney or were prepared by and in the possession of the appellee's insurer's attorney at the time of the appellant's request under the State FOIA to inspect and to copy the releases.

█ We conclude that lack of possession of an existing writing by a public body at the time of a request under the State's

---

**4.** Where the document involves "personal" conduct in addition to "official" conduct of the public body, one of the possibly applicable exemptions is the "invasion of privacy" exemption set forth in *W.Va.Code,* 29B–1–4(2) [1977], dis-

cussed by this Court in *Child Protection Group v. Cline,* 177 W.Va. 29, 350 S.E.2d 541 (1986), and in *Hechler v. Casey,* 175 W.Va. 434, 444–447, 333 S.E.2d 799, 809–12 (1985).

Freedom of Information Act is not by itself determinative of the question whether the writing is a "public record" under *W. Va. Code,* 29B–1–2(4), as amended, which defines a "public record" as a writing "retained by a public body." The writing is "retained" if it is subject to the control of the public body.[5]

"[A]gency possession *or control* is prerequisite to triggering any duties under the FOIA." *Kissinger v. Reporters Committee,* 445 U.S. 136, 151, 100 S.Ct. 960, 969, 63 L.Ed.2d 267, 282 (1980) (emphasis added).[6] "If FOIA is to be more than a dead letter, it must necessarily incorporate some restraint upon the agency's powers to move documents beyond the reach of the FOIA requester." *Kissinger v. Reporters Committee,* 445 U.S. 136, 159, 100 S.Ct. 960, 973, 63 L.Ed.2d 267, 287 (1980) (Brennan,

---

5. Preparation of a writing, such as a litigation settlement document, by an attorney for a public body or by an attorney for a public body's insurer is viewed as preparation by the public body for the purpose of *W. Va. Code,* 29B–1–2(4) [1977]. Otherwise, a public body could thwart disclosure under the State FOIA by having an attorney or an insurer's attorney prepare every writing which the public body wishes to keep confidential. We need not address any question of whether an attorney's work product is exempt from disclosure under the State FOIA; it is clear that such an exemption would apply, if at all, only to a writing reflecting the mental impressions, conclusions, opinions or theories of an attorney prepared in anticipation of litigation or in preparation for trial, and would not apply to a writing, such as a release or another litigation settlement document, prepared by an attorney to conclude litigation. *Dutton v. Guste,* 395 So.2d 683, 685 (La.1981).

6. As explained in note 16 of the companion case of *Forsham v. Harris,* 445 U.S. 169, 100 S.Ct. 977, 63 L.Ed.2d 293 (1980), the majority of the Supreme Court of the United States is of the opinion that a writing to be an "agency record" under the Federal FOIA must *ordinarily* be in the *possession and* control of the agency in question, and in their opinion there is no obligation, in effect, to "create" an agency record by compelling the agency in question to obtain the writing from another agency or from a private organization receiving governmental grant funds. On the other hand, that court implied in note 9 of *Kissinger v. Reporters Committee* that it would not countenance an abuse of the physical possession requirement:

There is no question that a 'withholding' [of an agency record] must be gauged by the time at which the request is made since there is no FOIA obligation to retain records prior to that request.... We need not decide whether this standard might be displaced in the event that it was shown that an agency official purposefully routed [that is, kept] a document out of agency possession in order to circumvent a FOIA request. No such issue is presented here. We also express no opinion as to whether an agency withholds documents which have been wrongfully removed by an individual after a request is filed.

This point is amplified by Justice Stevens in note 6 of his opinion concurring in part and dissenting in part, in *Kissinger v. Reporters Committee* (joined by Brennan, J.):

Under Rule 34 of the Federal Rules of Civil Procedure [involving discovery in a civil case], a party is required to produce requested documents if they are within his 'possession, custody or control.' The same standard applies to subpoenas *duces tecum* issued under Rule 45, [citation omitted]. In construing these rules the courts have rejected a narrow physical-possession test, focusing instead on whether the subpoenaed party has a legal right to custody or control of the documents in question. [citations omitted] Thus, if this case involved compliance with a discovery request rather than an [sic] FOIA request, I doubt very much that the agency could justify its failure to produce the documents on the ground that the agency head had wrongfully removed them from the agency's physical possession just before the subpoena was served.

In note 9 of his opinion Justice Stevens (joined by Justice Brennan) also comments upon note 9 of the majority opinion in *Kissinger v. Reporters Committee,* quoted *supra:*

The Court recognizes that there might be situations where documents were removed [or kept away] from the agency in order to avoid FOIA requests and suggests that its strict 'physical-possession' standard might be 'displaced' under these circumstances, ... As a practical matter, however, the Court's suggestion provides little comfort to the intended beneficiaries of the Act. For, if an agency can make a sufficient response to a request by simply denying physical possession, it will be a rare case indeed in which the ordinary citizen can overcome that denial by proof of improper motivation. Moreover, it would be unseemly to invite litigation and discovery into the subjective motivation of agency officials responsible for processing the flood of paper that threatens to engulf today's bureaucracy. Focusing attention on the agency's reason for not reacquiring [or now obtaining] the documents, rather than on the individual employee's motive for removing them [or keeping them out of the agency's possession] in the first place, seems to me to be a preferable way of eliminating the incentive to transfer documents [or to fail to obtain possession of documents in the first place] to avoid disclosure under FOIA.

J., concurring in part and dissenting in part).[7]

In *Carbondale Township v. Murray*, 64 Pa.Commw. 465, 440 A.2d 1273 (1982), a reporter for a newspaper requested certain officials of a township to make available to him, for inspection and copying, the township's cancelled checks on the road account and payroll account. The request was denied by the officials. In affirming the lower court's decision that the cancelled checks were public records under the State's so-called Right-to-Know Law, the appellate court held, as we hold here, that a public body may not evade disclosure of records under its control by showing lack of actual possession of the records:

> [T]he only remaining consideration is whether the lower court erred in ordering that, in the event the 'cancelled checks or copies of them are not in the possession of the defendants, then the defendants are directed to authorize the persons or institutions in possession of the same to make them available to the plaintiffs for inspection.'

The Township argues that the effect of such an order is to order the bank utilized by the Township to produce the bank's business records. To the contrary, the lower court has only ordered the Township and its officials to authorize the bank to make copies of the checks in question available to the petitioners. While the Township may not have actual possession of its cancelled checks, it has control over their production in that it can authorize the bank to produce them. [footnote omitted]

If we would conclude that the lower court was in error in this regard, we would be permitting any governmental body to escape public scrutiny of its records by simply alleging that it no longer has possession of its public

records. Courts have the power to grant complete relief and unquestionably may do so when such complete relief would be, as here, in furtherance of the public interest.

64 Pa.Commw. at 468–469, 440 A.2d at 1274–75.

■ Similarly, in this case, while the appellee may not have actual possession of the releases, he has control over their production in that he can authorize his attorney or the county's insurer's attorney to produce copies of the releases. The trial court erred in not enjoining the appellee from withholding the releases and in not ordering the production of the same.

## E. AGREEMENT ON CONFIDENTIALITY

■ The courts refuse to enforce a provision in a litigation settlement agreement prohibiting disclosure of the terms of the agreement where such a provision is contrary to the freedom of information statute. Assurances of confidentiality do not justify withholding public information from the public; such assurances by their own force do not transform a public record into a private record for the purpose of the State's Freedom of Information Act. *See Register Division of Freedom Newspapers, Inc. v. County of Orange*, 158 Cal. App.3d 893, 909, 205 Cal.Rptr. 92, 102 (1984). *Accord, Hechler v. Casey*, 175 W.Va. 434, 444, 333 S.E.2d 799, 809 (1985): " '[T]o allow the government to make documents exempt by the simple means of promising confidentiality would subvert FOIA's disclosure mandate.' *Washington Post Co. v. United States Department of Health & Human Services*, 690 F.2d 252, 263 (D.C.Cir.1982)." [8]

---

7. We note that the Records Management and Preservation of Essential Records Act, *W.Va. Code*, 5–8–1 [1961], *et seq.*, imposes a requirement upon "each person who has custody *or control* of state records" to compile and periodically revise an inventory of the same and report to the commissioner of finance and administration as the state records administrator. *W.Va. Code*, 5–8–7(d) [1961] (emphasis added).

8. In syllabus point 5 of *Hechler v. Casey*, 175 W.Va. 434, 333 S.E.2d 799 (1985), this Court held in a related context: "An agreement as to confidentiality between the public body and the supplier of the information may not override the Freedom of Information Act, *W.Va.Code*, 29B–1–1 *et seq.*"

■ In the case now before us the federal district court in the federal civil rights action against the sheriff did not seal the terms of the settlement agreement, but the parties agreed not to disclose the same. The parties' agreement is void to the extent that it conflicts with the State FOIA's definition of a "public record."

## III.

### THE COMMON LAW ON MAINTAINING RECORDS

■ With respect to the appellant's request for declaratory relief, the trial court erred in denying the same.[9] A public official has a common law duty to create and maintain, for public inspection and copying, a record of the terms of settlement of litigation brought against the public official or his or her employee(s) in their official capacity. *See Miami Herald Publishing Co. v. Collazo*, 329 So.2d 333, 338–39 (Fla.Dist.Ct.App.) (settlement agreement in tort action, against city police officer and city, alleging police misconduct and improper police training), *cert. denied*, 342 So.2d 1100 (Fla.1976); *Courier Journal v. McDonald*, 524 S.W.2d 633, 635 (Ky.1974) (invalid court order sealing terms of settlement of tort action, against city police officers and city, alleging negligence or willful misconduct of defendants). This Court has expressed the common law principle on the creation and maintenance of public records in more general terms in *State ex rel. Charleston Mail Association v. Kelly*, 149 W.Va. 766, 143 S.E.2d 136 (1965):

'Whenever a written record of the transactions of a public officer[,] in his office, is a convenient and appropriate mode of

discharging the duties of his office, it is not only his right but his duty to keep that memorial, whether expressly required so to do or not; and when kept it becomes a public document[.]'

149 W.Va. at 769, 143 S.E.2d at 139 (citation omitted).

## IV.

### ATTORNEY'S FEES

Finally, the appellant seeks recovery of its reasonable attorney's fees in this case.

The Federal FOIA expressly allows recovery of reasonable attorney's fees against the government when the party who made the request for disclosure "has substantially prevailed." 5 *U.S.C.* § 552(a)(4)(E) (1982). Several state freedom of information statutes expressly allow recovery of reasonable attorney's fees against the government. Some of these state statutes require only that the person who made the request for disclosure "prevail" in the action; other state statutes require the government to have acted "unreasonably," or "in bad faith," or in an "arbitrary and capricious" manner. *See* Braverman and Heppler, *A Practical Review of State Open Records Laws*, 49 Geo. Wash.L.Rev. 720, 755–56 (1981).

Our State FOIA does not expressly allow recovery of reasonable attorney's fees against the public body.[10] No other statute of this State authorizes such a recovery. "As a general rule each litigant bears his or her own attorney's fees absent a contrary rule of court or express statutory or contractual authority for reimbursement." Syl. pt. 2, *Sally-Mike Properties v. Yokum*, 179 W.Va. ——, 365 S.E.2d 246 (1986).

9. The request for declaratory relief was not to enforce a right provided directly by the State FOIA. There is no obligation under the State FOIA to create any particular record, but only to provide access to a public record already created and which is "retained" by the public body in question. *See Kissinger v. Reporters Committee*, 445 U.S. 136, 152, 100 S.Ct. 960, 969, 63 L.Ed.2d 267, 282 (1980). Thus, the State FOIA does not itself require a public body to create litigation settlement documents to be retained for public inspection. As discussed *infra* in the body of this opinion, the common law in

this State does require a public official to create and maintain such documents involving the public official in an official capacity. The State FOIA and the common law principles are not, therefore, coextensive but are interrelated.

10. *W.Va.Code*, 29B–1–6 [1977] provides criminal (misdemeanor) penalties (a fine of $100.00 to $500.00, or a county jail term of not more than ten days, or both) for a conviction of a willful violation of the State FOIA by a custodian of a public record.

On the other hand, "[t]here is authority in equity to award to the prevailing litigant his or her reasonable attorney's fees as 'costs,' without express statutory authorization, when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." Syl. pt. 3, *id.*

We have been particularly concerned in prior cases about the legal expenses of citizens in litigation against government officials. For example, in an action under the State FOIA to inspect and copy certain municipal court traffic records which were by statute expressly made open to public inspection, this Court, in *Richardson v. Town of Kimball,* 176 W.Va. 24, 340 S.E.2d 582 (1986), allowed recovery of reasonable attorney's fees against the town for deliberate disregard of the mandatory provisions of the open court records statute. In syllabus point 3 of the opinion in *Richardson* we held:

'Citizens should not have to resort to law suits [one word in the original source] to force government officials to perform their legally prescribed nondiscretionary duties. When, however, resort to such action is necessary to cure willful disregard of law, the government ought to bear the reasonable expense incurred by the citizen in maintaining the action.' *Nelson v. W. Va. Pub. Employees Ins. Bd.,* [171] W.Va. [445], 300 S.E.2d 86, 92 (1982).

In the present case, however, the record does not contain any evidence that the appellee willfully disregarded the law or acted in bad faith, vexatiously, wantonly or for oppressive reasons. For a person prevailing in an action under the State's Freedom of Information Act to recover reasonable attorney's fees, the evidence before the trial court must show bad faith, vexatious, wanton or oppressive conduct on the part of the custodian of the public record(s). *Cf. Cape Coral Medical Center, Inc. v. News-Press Publishing Co.,* 390 So.2d 1216, 1218 (Fla.Dist.Ct.App.1980) (conduct triggering an award of reasonable attorney's fees under a freedom of information statute involves, ordinarily, a question of fact, which requires development before the trial court). The appellant's re-

quest for recovery of reasonable attorney's fees is therefore denied.

For the reasons stated in this opinion the final orders of the trial court are reversed.

Reversed.