420 S.E.2d 883

Larry SCHARTIGER and Donna Schartiger, His Wife; Darius Schartiger and Connie Schartiger, His Wife; Robert Spencer and Lucy Spencer, His Wife; and James DePugh and Cynthia DePugh, His Wife, Plaintiffs Below, Appellants,

v.

LAND USE CORPORATION, A West Virginia Corporation, Edward King, Individually and in His Capacity as President of the Land Use Corporation; Maplewood Mining Company, Inc., A West Virginia Corporation; and Larry Legg, Individually and in His Capacity as President of Maplewood Mining Company, Inc., Defendants Below, Appellees.

No. 19482.

Supreme Court of Appeals of West Virginia.

Submitted May 14, 1991.

Decided July 11, 1991.

Opinion Dissenting in Part by Justice McHugh June 26, 1992.

Michael C. Farber, Sutton, for appellants.

Arden J. Curry, II, Pauley, Curry, Sturgeon & Vanderford, Charleston, for appellees.

NEELY, Justice.

The question we decide in this case is whether the trial court erred in not award-

ing plaintiffs their attorney's fees and costs under *W. Va. Code*, 22A–3–25(f) [1985][1], which provides that a court may award attorneys' fees in civil suits concerning surface mining operations.[2]

On 18 September 1987, appellee, Land Use Corporation, acting through appellee, Maplewood Mining Company, a contract miner, set off a blast at its surface mine in the vicinity of the appellants' homes located on the Tioga Road near Craigsville, in Nicholas County.[3] Around the same time, the four families experienced a drastic reduction in their well water, so that the houses lost clean running water.

The four families experienced considerable inconvenience due to the loss of their well water, and sought to have Land Use connect them to the local public water system. In December of 1987, one of the appellants, Ms. Donna Schartiger, contacted Michael Farber, Esquire, and on 11 February 1988, the Schartigers and the other families (hereinafter "the Schartigers") filed suit against Land Use. On 17 June 1988, Land Use contacted Mr. Farber in an effort to settle the case.[4] On 12 July 1988, Mr. Farber offered to settle the case for either $77,187.50 or for $63,459.50 plus the connection of the appellants to the public water supply at Land Use's expense. The next day, Land Use responded with an offer of $20,496.00. Appellants rejected this offer because it did not compensate them for the hardship of going without adequate

well water for a number of months, and would not pay their attorney's fees and costs.

In early October of 1988, Land Use offered $23,000 to settle the claim. Appellants refused the offer. Then, on 12 October 1988, Land Use raised its offer to $30,000. Appellants' counsel, in his supplemental brief in rebuttal, admitted that this offer, "would, in effect, pay for the estimated costs and attorney fees, etc., but would provide no compensatory damages for appellants who had then subsisted without water for nearly 400 days as of that date."

The case went to trial on 1 February 1989. On 8 February 1989, the jury deliberated and returned a verdict for the appellants, requiring Land Use to replace the appellants' water supplies. However, on the separate question of compensatory damages, the jury awarded no damages. On 10 March 1989, the judge entered an order incorporating the jury's verdict.

Appellants moved for an award of attorney's fees, and on 6 June 1989, after giving the parties an opportunity to brief the court on the appropriateness of awarding appellants' attorney's fees and costs in the amount of $27,715, the court decided not to award attorney's fees because the court found that the appellees' defense was made in good faith and was not vexatious, wanton or oppressive.

## I.

█ The trial court's observation that Land Use did not act in bad faith or in a

---

1. *W. Va. Code*, 22A–3–25(f) [1985] provides:
   Any person or property who is injured in his person through the violation by any operator of any rule, regulation, order or permit issued pursuant to this article may bring an action for damages, including reasonable attorney and expert witness fees, in any court of competent jurisdiction. Nothing in this subsection shall effect the rights established by or limits imposed under state workers' compensation laws.
   (The expression "any person or property" is not a misprint; it appears in the *Code* as quoted and the *Code* version is faithfully copied from Chapter 77, *Acts of the Legislature*, Regular Session, 1985.)

2. We note that appellants have requested attorney's fees under *W. Va. Code*, 22A–3–25(d) [1985]

and that appellees have responded to this application under the same Code section. However, the applicable Code section is not subsection (d), but subsection (f). Attorneys' fees are awarded under subsection (d) for suits brought under *W. Va. Code*, 22A–3–25(a) [1985] which pertains to suits against the State and other governmental instrumentalities. Litigants may ask for attorneys' fees under subsection (f) for any violation of *W. Va. Code*, 22A–3–1 [1985], *et seq.*

3. The appellants are four families living near one another in Craigsville.

4. The parties dispute whether there was any earlier effort made to settle the case.

wanton or oppressive manner in defending its case indicates that he applied the wrong standard in determining whether to award attorneys' fees under *W.Va.Code*, 22A–3–25(f) [1985]. We said in Syllabus Point 2 of *Sally–Mike Properties v. Yokum*, 179 W.Va. 48, 365 S.E.2d 246 (1986):

> As a general rule each litigant bears his or her own attorney's fees absent a contrary rule of court or express statutory or contractual authority for reimbursement.

However, there is a common law exception to this general rule, which we applied in a case involving West Virginia's Freedom of Information Act, which contains no express provision for attorneys' fees. Syllabus Point 6 of *Daily Gazette v. Withrow*, 177 W.Va. 110, 350 S.E.2d 738 (1986) states:

> For a person prevailing in an action under the State's Freedom of Information Act to recover reasonable attorney's fees, the evidence before the trial court must show bad faith, vexatious, wanton or oppressive conduct on the part of the custodian of the public record(s).

It appears that the trial court applied the *Daily Gazette* standard in the case before us.

The *Daily Gazette* standard is not applicable here, because *W.Va.Code*, 22A–3–25(f) [1985] *specifically provides* that a court *may* award attorneys' fees in a civil suit concerning a surface mining operation.

We reverse the trial court's decision on attorneys' fees, not because the court abused his discretion, but because he applied the wrong standard, and may have believed that attorneys' fees could not have been awarded in the absence of bad faith or vexatious or wanton conduct by a party.

## II.

The question before us of what standard to apply in awarding attorneys' fees under *W.Va.Code*, 22A–3–25(f) [1985] is one of first impression. In deciding this question it is helpful to examine the federal courts' approach when Congress has departed from the common law rule. The federal courts have adopted different standards for different statutes.[5]

In *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (D.C.Cir.1988), the court considered an award of attorneys' fees under the Surface Mining Control and Reclamation Act, 30 U.S.C. § 1270(d) (1982 and Supp.1986).[6] The Surface Mining Control and Reclamation Act is the federal version of *W.Va.Code*, 22A–3–1 [1985], *et seq.* In *Hodel*, the court interpreted the attorneys' fees provision of SMCRA in accordance with the U.S. Supreme Court's previous awards of civil rights attorneys' fees under 42 U.S.C. § 1988 (1982), noting that the Supreme Court had done the same thing for the Clean Air Act, 42 U.S.C. § 7604(d) (1982). *Hodel, supra* at 1519.

Under the Civil Rights Attorneys' Fees Awards Act, 42 U.S.C. 1988 (1982), the Supreme Court has adopted the prevailing party standard.[7] *See Texas State Teachers v. Garland Indep. School D.*, 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989); *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

> [A plaintiff may be considered a prevailing party] for attorney's fees pur-

---

5. *See Ruckelshaus v. Sierra Club*, 463 U.S. 680, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983), in which the U.S. Supreme Court discussed the "prevailing party," the "substantially prevailing party," and the "successful party" standards.

6. Subsection (d) of the Surface Mining Control and Reclamation Act, 30 U.S.C. § 1270 (1982 and Supp.1986) provides in pertinent part:
   The court, in issuing any final order in any action brought pursuant to subsection (a) of this section, may award costs of litigation

(including attorney and expert witness fees) to any party, whenever the court determines such an award is appropriate ...

7. The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. 1988 (1982) provides:
   The Court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

poses if [he succeeds] on any significant issue in litigation which achieves some of the benefit [he] sought in bringing the suit.

*Hensley, supra* at 433, 103 S.Ct. at 1939 (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–279 (1st Cir.1978)) (brackets supplied by this court).

A prevailing party must be one who has succeeded on any significant claim affording it some of the relief sought, either *pendente lite* or at the conclusion of the litigation ... [T]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute.

*Texas State, supra* 489 U.S. at 783–84, 109 S.Ct. at 1488–89.

■ Although the efforts of the federal courts offer us some guidance, the language of *W. Va. Code*, 22A–3–25(f) [1985] is not identical to any of these statutes. Moreover, in the federal cases cited, the standards applied are not distinct, but overlap with one another. For attorneys' fees applications brought under *W. Va. Code*, 22A–3–25(f) [1985], we adopt the rule that the trial court should award attorneys' fees if the applicant was the prevailing party at trial, and for a party to "prevail" at trial, he need not show success on every claim brought but he must demonstrate significant success on a significant claim. In other words, he must have succeeded in effecting a "material alteration of the legal relationship of the parties in a manner which [the Legislature] sought to promote in the fee statute." *Texas State, supra* at 783, 109 S.Ct. at 1488.

■ In applying this standard, trial courts should consider good faith efforts by either party to settle the case without unnecessary litigation. Our Legislature encourages the bringing of certain types of

suits by enacting fee-shifting statutes, but a party who receives less from the jury than he was offered by his opponent has not *necessarily* "materially altered" their relationship. A party who needlessly pursues litigation after he has been offered a settlement that exceeds what the jury finally awards by an amount sufficient to have compensated the plaintiff for all his attorneys' fees and expenses *at the time the offer was made* is not entitled to any attorneys' fees that accrued after the offer was made.

■ In deciding the case before us, the trial court is to examine all of the facts as they relate to the "prevailing" party standard. The most pertinent of these facts are those relating to settlement offers by Land Use. The question of fact to be resolved by the trial court on remand is at what point did Land Use first make a reasonable offer to the Schartigers. If that date is 12 October 1988, then Land Use should pay reasonable attorneys' fees accrued before that date. However, if such an offer was made in the fall of 1987, before the Schartigers retained Mr. Farber, then Land Use is not responsible for *any* of plaintiffs' attorney's fees expended in the pursuit of this litigation except for the cost of a consultation on the advisability of accepting the offer.[8]

On 12 October 1988, Land Use offered the plaintiffs $30,000 to settle the case. As appellant's counsel admitted in his supplemental brief in rebuttal, "[this] would, in effect, pay for the estimated costs and attorney's fees, etc., but would provide no compensatory damages for appellants who had then subsisted without water for nearly 400 days as of that date." The jury awarded no compensatory damages but only the costs of connecting the plaintiffs to the local public water system.

■ It appears from a State Department of Energy investigation report dated 22

---

**8.** If the trial court finds that such an offer was made in the fall of 1987, then he may award minimal attorney's fees for the initial engage-

ment of Mr. Farber to evaluate Land Use's settlement offer. In that case, no other award of attorney's fees would be reasonable.

December 1987, that the mining company offered to restore the appellants' water in the Fall of 1987.[9] The offer probably occurred before the appellants engaged Mr. Farber, and it certainly occurred, if at all, before they filed suit against Land Use. The report contained the following notation:

> Company conducted a complete geologic study of the area and has agreed to extend a public water line to five residents in this area who have experienced water problems.

We cannot know for sure whether the company had actually offered to restore the appellants' water back in 1987, but the *appellants'* lawyer, Mr. Farber, attempted to introduce this evidence of the company's offer to restore the appellants' water because he thought the jury would take the offer of settlement as an admission of Land Use's liability. The trial court properly excluded the evidence of an offer of settlement under Rule 408, *W.Va.R.Evidence.* [10]

■ The fee-shifting rules adopted by the legislature in the statute under consideration and enforced by this court are meant to cover two extreme cases as well as all of the cases in between. If a tortfeasor approaches his victim immediately after the tort and makes a reasonable offer that includes reasonable attorneys' fees up to the time of the offer, only to be rebuffed by a greedy victim or victim's lawyer, and the jury awards less than the tort-feasor originally offered for damages alone, then it would be an abuse of discretion for the trial court to award attorneys' fees to the plaintiff.

■ On the other hand, if the tort-feasor chases down the plaintiff on the courthouse steps minutes before trial only to make an offer that might minimally cover the plaintiff's damages, but that would not cover plaintiff's attorneys' fees expended to that point, and the jury awards damages roughly equivalent to the tortfeasor's offer, then it would be an abuse of discretion for the trial court *not* to award attorneys' fees to the plaintiff.

Most cases do not fit either of these extremes but fall somewhere in between. In those cases, the trial judge reasonably applying the "prevailing party" standard should arrive at an equitable decision. Although it appears fairly clear from the briefs and exhibits that some offers of settlement were made, the exact amount, their firmness, and their timing cannot be ascertained with precision from the material before us. Furthermore, although we *think* we know about the $30,000 offer discussed above, we do not have a record before us constructed to permit the informed application of the standards set out in this opinion.

For the reasons given above, the decision of the Circuit Court of Nicholas County on the award of attorneys' fees is reversed, and the case is remanded for the circuit court to conduct a hearing and apply the criteria set forth in this opinion.

Reversed and remanded with directions.

MILLER, C.J. and McHUGH, J., dissent and reserve the right to file dissenting opinions.

McHUGH, Justice, dissenting in part, concurring in part:

Standing alone, the syllabus agreed upon by the Court's majority is laudatory and it is supported by sound legal authorities.

---

**9.** In appellants' supplemental brief in rebuttal, Mr. Farber charges that any suggestion that an offer was made in the fall of 1987 is a "gross misrepresentation of fact."

**10.** Appellants' counsel has further muddied the issue of whether the appellants received more at trial than they were offered before trial, in that he has presented to us another, higher, official estimate of the cost of hooking appellants up to the public water system—$50,940 (not including the costs borne by the water district itself), considerably higher than the $30,000 offered before trial, but no more, in practical effect, than Land Use's offer to restore appellant's water allegedly made before December of 1987.

The text of the opinion, however, reveals that the majority pressed forward, adding requirements which could only be characterized as bizarre, and certainly not supported by any legal authority.

Appropriately enough, the majority opinion follows the holdings of *Texas State Teachers Ass'n v. Garland Indep. School Dist.*, 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989), *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40, 50 (1983), and *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978). These cases all support the syllabus in this case. However, without any fanfare or any supporting legal authority, the majority's economic whims arrive front and center, thus, effectively eroding the holding set forth in the syllabus. Under a fair reading of the Court's opinion in this case, these whims of the majority become the standard by which the syllabus is to be applied. Clearly, application of this new standard represents a departure from the holdings of *Texas State Teachers, Hensley*, and *Nadeau*.

Although any reasonable interpretation of the cases cited above and relied upon by the majority would require attorney fees to be awarded if the plaintiff "prevailed," as that term is commonly understood by courts across the country, the majority in this case has added an absurd requirement. Now, a trial judge is required to ascertain *at what point* during litigation a "reasonable" offer to settle the case was made. Clearly, this is unduly burdensome and will cause lawyers and judges throughout our state to scratch their heads in amazement at the novel way the majority of the Court has chosen to resolve this case.

Perhaps the reason the majority's approach is not supported by any legal authority is that the potential result in many cases will be lamentably inequitable and inconsistent with the legislative purpose of *W.Va.Code*, 22A–3–25(f) [1985]. What the majority fails to comprehend is that often, the relief sought and/or obtained in cases brought under *W.Va.Code*, 22A–3–25

[1985] does not revolve around monetary damages. This failure to comprehend is evident in the majority's pronouncement that "a party who receives less from the jury than he was offered by his opponent has not *necessarily* 'materially altered' their relationship." In this case, the only relief obtained was that the appellee was required to replace the appellant's water supplies. It does not require a great deal of computation to see that in this case, the *amount* of compensation obtained by the appellants, specifically, zero, is less than the appellee's offer. Consequently, under the majority's approach, the trial court is permitted to find that the parties' relationship was not "materially altered," when in fact, it was.

Those who seek to protect their air, land, and water under the provisions of *W.Va. Code*, 22A–3–1, *et seq.* will be thwarted in their efforts under the majority's opinion, which will act as a barrier to environmental justice in many ways, but most importantly, by rejecting the concept that, in most instances, those who seek these vindications lack sufficient funds to obtain legal counsel.

By enacting *W.Va.Code*, 22A–3–25(f) [1985], the legislature sought to promote its policy that "it is essential to the economic and social well-being of the citizens of the state of West Virginia to strike a careful balance between the protection of the environment and the economical mining of coal needed to meet energy requirements." *W.Va.Code*, 22A–3–2 [1985]. The statute at issue in this case, *W.Va.Code*, 22A–3–25(f) [1985], does not require a trial judge to ascertain at what point in the litigation a reasonable offer to settle was made before it may award attorney fees. By adding this ludicrous requirement, the Court's majority has amended the statute so that litigants with legitimate causes of action will now be stifled in their efforts to seek remuneration by way of the provided legislative remedy.

Nor do the cases discussing the "prevailing party" standard require such a determi-

nation by the trial judge. For example, in *Southwest Marine, Inc. v. Campbell Industries*, 732 F.2d 744 (9th Cir.1984), the United States Court of Appeals for the Ninth Circuit was faced with a case involving the recoverability of attorney fees in an antitrust action under the federal Clayton Act.[1] As the majority in this case has done, the court in *Southwest Marine* looked to the recoverability of attorney fees under 42 *U.S.C.* § 1988 (1982). In applying that standard to recovering attorney fees under the Clayton Act, the court stated:

> Under 42 U.S.C. § 1988 a plaintiff may be awarded attorney's fees if he is a 'prevailing party.' In *American Constitutional Party v. Munro*, 650 F.2d 184 (9th Cir.1981), we held that a plaintiff *need not obtain formal relief* to recover fees. Rather, for there to be a 'prevailing party,' there must simply be a causal relationship between the litigation brought and the *practical outcome realized. Id.* at 187; *Pomerantz v. County of Los Angeles*, 674 F.2d 1288, 1293 (9th Cir.1982). As a result of the action filed by plaintiff, the defendants decided to permit Southwest Marine to use the dock under an assignment from National Steel and Shipbuilding Co. Thus, whether or not plaintiff ultimately prevails on damages on remand, it has 'prevailed' within the meaning of 42 U.S.C. § 1988 (1976). *See Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980); *Virginia Academy of Clinical Psychologists v. Blue Shield*, 543 F.Supp. 126, 130 (E.D.Va.1982).

732 F.2d at 747 (emphasis supplied). *See also Sciambra v. Graham News*, 892 F.2d 411, 415–16 (5th Cir.1990) ("[I]t does not follow ... that an attorneys' fees award is dependent on a compensatory damages award." Rather, the statute which permits attorney fees "and the fact of damage analysis make the actual recovery of compensatory damages irrelevant to the recoverability of attorneys' fees.")

The guidelines set forth in the text of the majority's opinion will also make it more difficult for lawyers who represent those who seek to vindicate their environmental rights. For example, the trial court's new duty to determine when a *reasonable* offer to settle was made will now factor into the lawyer's judgment as to when he or she would advise acceptance or rejection of such an offer. Consequently, lawyers who represent plaintiffs in actions brought under this article will be hesitant to even discuss settlement options for fear that ultimately "prevailing" may really mean not receiving a fee when representing a client who is suffering from economic hardship, just because no compensatory damages were awarded. In other words, the majority would prefer that those only knock on the courthouse door who are wealthy enough to vindicate their environmental rights.

Provisions which award reasonable attorney fees are not uncommon in statutes whose ultimate purposes are to provide a remedy for an alleged wrongdoing. *See, e.g., W.Va.Code*, 22A–1A–20 [1985] (allowing costs and expenses, including reasonable attorney fees in the event a miner is discriminated against for seeking corrections of mine violations); and *W.Va.Code*, 5–11–13 [1983] (allowing reasonable attorney fees for complainants who prove discriminatory practices). These statutes all require "reasonableness" in awarding attorney fees.

However, the majority opinion in this case confuses the question of whether an award of attorney fees may even be recovered with the question of whether such fees are reasonable. By asserting that at *some* points during the parties' dispute, recovery of attorney fees *is* reasonable, while at *other* points, such recovery is *not* reasonable, the majority opinion equates *reasonable* attorney fees with *recoverable* attorney fees. *W.Va.Code*, 22A–3–25(f) [1985] does not contemplate such a scheme.

Rather, once it has been determined that the plaintiff is a "prevailing" party, *i.e.*,

[1]. *See* 15 *U.S.C.* § 26 (1978).

properly applying the Court's syllabus in this case, then the trial court is to determine whether the attorney fees sought to be recovered by the plaintiff are reasonable.

> [I]t has been recognized that there are several general factors, more or less constant in the cases, which may properly be considered in passing upon the amount to be allowed as a reasonable compensation to an attorney. These factors have been well summarized in Disciplinary Rule 2–106 of the Code of Professional Responsibility[.]

1 Stuart M. Speiser, *Attorneys' Fees* § 8:2 (1973).

The general factors contained in Disciplinary Rule 2–106 of the *Code of Professional Responsibility* are also contained in Rule 1.5 of the *Rules of Professional Conduct*, which have been adopted by this Court. Rule 1.5 provides, in part:

> (a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
>
> (1) the time and labor required, the novelty and difficulty of the questions involved, and skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent.

We have adopted similar guidelines where attorney fees are sought against a third party in syllabus point 4 of *Aetna Casualty & Surety Co. v. Pitrolo*, 176 W.Va. 190, 342 S.E.2d 156 (1986).

None of these factors deal with settlement offers or at what point during litigation a "reasonable" offer to settle was made so as to allow an award of attorney fees.

Because these factors have long been key to determining reasonableness of attorney fees, the majority should have looked to these factors with which trial judges and lawyers possess more than just a passing familiarity.

Because I believe that the majority of the Court in this case wrongfully added a requirement not called for by *W.Va.Code*, 22A–3–25(f) [1985], and then conditioned recovery of attorney fees upon this requirement, I dissent. However, I concur with the statement contained in the syllabus, *per se*.

I am authorized to state that Chief Justice MILLER joins in this opinion.