IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2017

_____

No. 16-0298

_____

QUICKEN LOANS, INC.,
Petitioner

v.

MARSHA GALE WALTERS,
administratrix for SUE WALTERS,
Respondent

_____

Appeal from the Circuit Court of Raleigh County
The Honorable H. L. Kirkpatrick III, Judge
Civil Action No. 11-C-1123-K

AFFIRMED IN PART; REVERSED IN PART; AND
REMANDED

_____

Submitted: April 19, 2017
Filed: June 15, 2017

Jeffrey J. Bresch, Esq.
JONES DAY
Pittsburgh, PA

Carrie Goodwin Fenwick, Esq.
GOODWIN & GOODWIN, LLP
Charleston, WV
Counsel for Petitioner

Sarah K. Brown, Esq.
Bren Pomponio, Esq.
MOUNTAIN STATE JUSTICE
Charleston, WV
Counsel for Respondent

JUSTICE WALKER delivered the Opinion of the Court.

FILED

June 15, 2017
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

CHIEF JUSTICE LOUGHRY dissents and reserves the right to file a dissenting opinion.

JUSTICE KETCHUM dissents and reserves the right to file a dissenting opinion.

SYLLABUS BY THE COURT

1. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus Point 1, *Chrystal R.L. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

2. "'[T]he trial [court] … is vested with a wide discretion in determining the amount of … court costs and counsel fees; and the trial [court's] … determination of such matters will not be disturbed upon appeal to this Court unless it clearly appears that [it] has abused [its] discretion.' Syl. Pt. 3, in part, *Bond v. Bond*, 144 W. Va. 478, 109 S.E.2d 16 (1959)." Syllabus Point 1, *Heldreth v. Rahimian*, 219 W. Va. 462, 637 S.E.2d 359 (2006).

3. "''The primary rule of statutory construction is to ascertain and give effect to the intention of the Legislature.' Syl. Pt. 8, *Vest v. Cobb*, 138 W. Va. 660, 76 S.E.2d 885 (1953)." Syllabus Point 1, *Sheena H. for Russell H. v. Amfire*, LLC, 235 W. Va. 132, 772 S.E.2d 317 (2015).

4. "''Where a particular construction of a statute would result in an absurdity, some other reasonable construction, which will not produce such absurdity, will be made.' Syl. Pt. 2, *Newhart v. Pennybacker*, 120 W. Va. 774, 200 S.E. 350

(1938)." Syllabus Point 3, *Sheena H. for Russell H. v. Amfire*, LLC, 235 W. Va. 132, 772 S.E.2d 317 (2015).

5.      The provisions of West Virginia Code § 31-7-8(m)(8) apply to any primary or subordinate mortgage loan that exceeds the fair market value of the property at the time the loan is made, either singly, in the case of a first or consolidation mortgage loan, or in combination with any outstanding balances of any existing loan.

6.      "Where attorney's fees are sought against a third party, the test of what should be considered a reasonable fee is determined not solely by the fee arrangement between the attorney and his client. The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Syllabus Point 4, *Aetna Cas. & Sur. Co. v. Pitrolo*, 176 W. Va. 190, 342 S.E.2d 156 (1986).

7. Attorney fees and costs awarded under W. Va. Code §31-17-17(c) are compensatory in nature and shall be subject to offset by the amount of any good faith settlements previously made with the plaintiff by other jointly liable parties.

WALKER, Justice:

Following a five-day trial in the Circuit Court of Raleigh County, West Virginia, a jury found that Petitioner Quicken Loans, Inc. ("Quicken Loans") violated the "illegal loan" provision of the West Virginia Residential Mortgage Lender, Broker and Servicer Act, West Virginia Code §31-17-8(m)(8)[1] in originating a primary mortgage loan for Respondent Sue Walters[2] and was liable to Ms. Walters for damages in the amount of $27,000.00. The jury found in favor of Quicken Loans on Ms. Walters's claim of fraud, and further found that Quicken Loans had not acted with malice.

Significantly, for purposes of this appeal, Ms. Walters had earlier settled her claims against co-defendants Kirk Riffe, an appraiser, and Bank of America N.A. ("BOA"), the entity that serviced the subject loan, for $75,000.00 and $23,000.00, respectively. Of these amounts, a total of $65,500.00 was designated to be paid to Ms. Walters or on her behalf, and $32,500.00 was designated as payment of attorney fees. In post-trial proceedings, the court below offset the settlement amounts designated to be paid to Ms. Walters against the $27,000.00 in damages awarded by the jury. Subsequently, in considering Ms. Walters's request for an award of attorney fees and

---

[1] The parties variously designate the statute the "illegal loan" statute and the "appraisal statute," and both terms are used in this opinion depending on context.

[2] Ms. Walters died during the pendency of this appeal, and this Court granted leave to substitute Marsha Gale Walters, administratrix, as party respondent.

costs, the court offset the settlement amounts designated as attorney fees against the fees sought by Ms. Walters's counsel. Thus, in total the court offset only $59,500.00 of the $98,000.00 paid by the settling defendants, against the total damages, costs and fees awarded against Quicken Loans.

In this appeal, Quicken Loans contends that the circuit court erred in allowing the illegal loan claim to go to the jury, arguing that W. Va. Code §31-17-8(m)(8) applies only where there are two or more mortgages on the property and the aggregate principal amount of the mortgage loans exceeds the property's fair market value. Quicken Loans also contends that the court erred in awarding any attorney fees, arguing that Ms. Walters did not prevail because the jury's verdict was effectively wiped out by application of the offset. Alternatively, Quicken Loans argues that the award of attorney fees cannot be sustained under the principles articulated in this Court's seminal decision in *Aetna Casualty & Surety Co. v. Pitrolo*, 176 W. Va. 190, 342 S.E.2d 156 (1986). Finally, Quicken Loans argues that the court erred in offsetting only a portion of the settlement monies received from appraiser Riffe and BOA against the total compensatory damages received by Ms. Walters, which damages include attorney fees and costs.

After careful review of the parties' briefs and arguments, the Appendix Record, and the applicable law, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

2

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In the summer of 2007, Ms. Walters called Quicken Loans seeking to refinance the existing mortgage loan on her home in Mabscott, Raleigh County, West Virginia.  Ms. Walters, who was responding to a Quicken Loans advertisement, was interested in obtaining a lower interest rate and a lower mortgage payment.

On September 14, 2007, Quicken Loans originated a fixed-rate, 30-year mortgage loan in the amount of $136,000.00.   As part of the loan approval process, Quicken Loans had contacted Title Source Inc., an entity described by Quicken Loans as "a related but independent company," which in turn contracted with Kirk Riffe, a licensed appraiser.   In performing the appraisal, Mr. Riffe compared Ms. Walters's Mabscott home to properties in the Woodlawn neighborhood of Beckley, concluding that the home was worth $152,000.00.  In fact, evidence at trial indicated that the fair market value of the property in September, 2007, was $64,000.00, and that Mr. Riffe's appraisal methodology was fatally flawed.

As of the date of closing of the Quicken Loans loan, no other mortgage loans existed on Ms. Walters's home; the purpose of the loan was to refinance her existing mortgage obligation, i.e., to pay off the existing mortgage loan and replace it with a loan carrying a lower rate of interest.

3

Immediately after originating the loan, Quicken Loans sold it to Countrywide Financial, which in turn sold it to BOA. Ms. Walters made regular payments on the loan for approximately twenty months, after which she found herself in financial difficulty and attempted, unsuccessfully, to work out a modification with BOA.

Thereafter, in December, 2011, Ms. Walters filed a lawsuit against Quicken Loans, Riffe and BOA, asserting three claims against Quicken Loans (unconscionable inducement, illegal loan, and fraud), two against Riffe (negligence and acceptance of a fee contingent on a predetermined conclusion), and one against BOA (illegal debt collection practice). In its answer, Quicken Loans admitted certain allegations, including, of relevance to this appeal, the principal amount of the loan. Further, Quicken Loans asserted affirmative defenses, including, of relevance to this appeal, that it had made the loan to Ms. Walters on reliance upon a bona fide written appraisal of the property made by Kirk Riffe, an independent third-party appraiser duly licensed or certified by the West Virginia Real Estate Appraiser Licensing and Certification Board, and prepared in compliance with the uniform standards of professional appraisal practice. Finally, Quicken Loans filed a motion for judgment on the pleadings, arguing that Ms. Walters's illegal loan claim failed as a matter of law because the statute on which the claim was based, West Virginia Code §31-17-8(m)(8), applies only where there are two or more mortgages on the property whose *aggregate* total exceeds the property's fair market value.

4

The case was hotly contested for more than three years. The docket sheet for the litigation evidences voluminous written discovery, multiple dispositive motions, motions *in limine*, multiple hearings on motions, several court-led mediations, a motion to exclude "pattern and practice" witnesses and an evidentiary hearing on the motion, and the like. Ultimately, as noted above, Ms. Walters settled with Mr. Riffe and BOA and dismissed her claim against Quicken Loans for unconscionable inducement, deeming it duplicative. On March 2, 2015, Ms. Walters's case against Quicken Loans proceeded to trial on the two remaining claims (illegal loan, and fraud), resulting in a finding for Ms. Walters on the illegal loan claim, a finding for Quicken Loans on the fraud claim, and a finding that Quicken Loans had not acted with malice. As noted, the jury awarded Ms. Walters $27,000.00 in compensatory damages. In light of its finding on the fraud claim, the jury did not address the issue of punitive damages.

In post-trial proceedings, Quicken Loans filed a motion to correct the verdict pursuant to Rule 60(a) of the West Virginia Rules of Civil Procedure, requesting that the circuit court apply an offset of the Riffe/BOA settlement monies as follows: $27,000.00 to be offset against the jury's award of damages, and the remaining $71,000.00 to be offset against any attorney fees that might be awarded to Ms. Walters's counsel. Ms. Walters, in turn, filed a petition for an award of attorney fees, seeking $180,312.55 in fees and costs for 675 hours of work. After requiring Ms. Walters's attorneys to refine their billing entries, in order to allow the court to better distinguish work done and costs incurred on claims against settling defendants and claims in which

5

Ms. Walters did not prevail, and following a hearing on both outstanding motions, the court below ruled that Ms. Walters had "suffered a single indivisible loss arising from the combined actions of Defendant Quicken Loans and the settling co-defendants, Bank of America and Kirk Riffe … [and therefore] Defendant Quicken Loans is entitled to an offset as a matter of law"; and Ms. Walters prevailed on her claim based on a violation of the appraisal statute "regardless of the dollar amount of damages actually awarded…," and therefore was entitled to an award of attorneys' fees and costs.

The court applied the offset not as Quicken Loans had requested but as follows: (1) the portion of the combined Riffe/BOA settlements payable to Ms. Walters or on her behalf ($65,500.00)[3] was offset against the damages awarded by the jury against Quicken Loans, effectively wiping out the jury award; and (2) the portion of the settlements designated as attorney fees ($32,500.00) was offset against the fees and costs sought from Quicken Loans. The total amount of the fees and costs awarded to Ms. Walters's attorneys by the court, after application of the offset, was $156,653.38.

## II. STANDARD OF REVIEW

---

[3] The $50,000.00 attributed as damages in the Riffe settlement was not paid directly to Ms. Walters; rather, it was paid to reduce the balance of her outstanding mortgage indebtedness.

6

It is well established in this Court's jurisprudence that "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.L. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

With respect to our review of an award of costs and damages, we have held that:

> "[T]he trial [court] … is vested with a wide discretion in determining the amount of … court costs and counsel fees; and the trial [court's] … determination of such matters will not be disturbed upon appeal to this Court unless it clearly appears that [it] has abused [its] discretion." Syl. Pt. 3, in part, *Bond v. Bond*, 144 W. Va. 478, 109 S.E.2d 16 (1959).

Syl. Pt. 1, *Heldreth v. Rahimian*, 219 W. Va. 462, 637 S.E.2d 359 (2006).

### III. DISCUSSION

**A.    *Applicability of West Virginia Code §31-17-8(m)(8)***

The first issue we consider is whether West Virginia Code §31-17-8(m)(8) applies where, as here, the mortgage at issue is the sole mortgage on the subject property. Quicken Loans contends that by its express terms, West Virginia Code §31-17-8(m)(8) applies only where there are two or more mortgages on the property and the aggregate principal amount of the mortgage loans exceeds the property's fair market value. In furtherance of its position, Quicken Loans presents the relevant portion of the statute as follows:

7

In making any primary or subordinate mortgage loan, no licensee may, and no primary or subordinate mortgage lending transaction may, contain terms which: … (8) Secure a primary or subordinate mortgage loan in a principal amount that, **when added to the aggregate total of the outstanding principal balances of all other primary or subordinate mortgage loans secured by the same property, exceeds the fair market value of the property** on the date that the latest mortgage loan is made…. (Emphasis in Quicken Loans brief)

In reliance on the longstanding rule of statutory construction "that significance and effect must, if possible, be given to every section, clause, word or part of the statute," Syl. Pt. 3, in part, *Meadows v. Wal-Mart Stores, Inc.*, 207 W. Va. 203, 530 S.E.2d 676 (1999), Quicken Loans argues that under the clear and unambiguous terms of the emphasized language, a single mortgage loan, even one in a principal amount that exceeds the property's fair market value, does not fall within the statutory prohibition. Quicken Loans points out that in *Skibbe v. Accredited Home Lenders, Inc.*, No. 2:08-cv-01393, 2014 WL 2117088 at *6 (S.D. W. Va. May 21, 2014), the United States District Court for the Southern District of West Virginia so held, and that this Court should find Judge Goodwin's opinion to be persuasive, if not dispositive.[4]

---

[4] *See State ex rel. Johnson & Johnson Corp. v. Karl*, 220 W. Va. 463, 477 n. 18, 647 S.E.2d 899, 913 n. 18 (2007) ("While federal court opinions applying West Virginia law are often viewed persuasively, we are not bound by those opinions.").

In contrast, Ms. Walters contends that by its express terms, West Virginia Code §31-17-8(m)(8) applies to any primary or secondary loan whose principal amount exceeds the property's fair market value. In furtherance of her position, Ms. Walters presents the relevant portion of the statute in her brief as follows:

> In making any **primary** or subordinate mortgage loan, no licensee may, and no **primary** or subordinate mortgage lending transaction may, contain terms which: … (8) Secure a **primary** or subordinate mortgage loan in a principal amount that, when added to the aggregate total of the outstanding principal balances of all other **primary** or subordinate mortgage loans secured by the same property, exceeds the fair market value of the property on the date that the latest mortgage loan is made…. (Emphasis in Ms. Walters's brief)

In reliance on the same rule of statutory construction as set forth above, Ms. Walters argues that literal application of the "aggregate total" language would effectively eliminate all primary loans, including consolidation loans, from the statute's ambit, as only secondary loans are defined under the Act as those "… subject to the lien of one or more prior recorded mortgages or deeds of trust." W. Va. Code §31-17-1(o). Ms. Walters further suggests that in this case the "aggregate total of the outstanding principal balances of all other primary or subordinate mortgage loans…," equals zero, an attempt to finesse Quicken Loans's argument by focusing solely on the amount of total indebtedness, not the number of mortgages on the property.

In short, we are presented with an interesting situation in which both parties contend that West Virginia Code §31-17-8(m)(8) is clear and unambiguous – and then

9

reasonably argue, utilizing the same rule of statutory construction, that the statutory provision has two entirely irreconcilable clear and unambiguous meanings. On this basis alone it might be tempting for this Court to conclude that the statute is ambiguous, but our precedents counsel against a rush to such conclusion. *See Habursky v. Recht*, 180 W. Va. 128, 132, 375 S.E.2d 760, 764 (1988) (disagreement among the parties "as to the meaning or the applicability of [a statutory] provision does not of itself render [the] provision ambiguous or of doubtful, uncertain or obscure meaning.") (internal quotations and citations omitted); *see also T. Weston, Inc. v. Mineral Cty.*, 219 W. Va. 564, 568, 638 S.E.2d 167, 171 (2006) ("[t]he fact that parties disagree about the meaning of a statute does not itself create ambiguity or obscure meaning.") (internal citations omitted). Rather, we will look beyond the parties' arguments, and their laser focus on a single rule of statutory construction, in order to determine whether our precedents provide a path to a more enlightened analysis.

As a threshold matter, we reject Ms. Walters's claim that this issue was resolved in *Quicken Loans v. Brown*, 230 W. Va. 306, 737 S.E.2d 640 (2012) (*Quicken Loans I*), either directly or *sub silentio*. Although one count of the complaint in *Quicken Loans I* alleged a violation of West Virginia Code §31-17-8(m)(8) in the origination of a primary loan – a consolidation loan, as in the instant case – the trial court's ruling that the statute applied to a single primary loan was not challenged on appeal. Rather, the illegal loan count was raised on appeal only in the context of whether the lower court erred in finding that a negligent violation of the statute supported the remedy of cancellation of

10

the loan.[5] *Quicken Loans I,* 230 W. Va. at 325-26, 737 S.E.2d at 659-60. We found this ruling to be error. The remainder of the *Quicken Loans I* decision dealt with issues involving attorney fees and punitive damages, all arising from the court's findings that Quicken Loans was liable for common law fraud and various claims under the West Virginia Consumer Credit and Protection Act, West Virginia Code §§ 46A-1-1 through 8-102. Thus, whether the appraisal statute applied to a single primary loan was neither raised in the appeal nor material to its disposition.

Similarly, we reject Quicken Loans's urging that we treat Judge Goodwin's ruling in *Skibbe* as persuasive authority. Judge Goodwin held that "[by] its terms, the statute does not apply when a borrower takes out her first mortgage loan and the principal balance of that loan exceeds the fair market value of the property at the time the loan is made…." *Skibbe*, 2014 WL 2117088 at *6. However, the district court provided no analysis to support his reasoning, and cited no precedents or other authority upon which he had relied, and we do not find a bald conclusion to be persuasive.

As this Court has instructed on many occasions, "'[t]he primary rule of statutory construction is to ascertain and give effect to the intention of the Legislature.' Syl. Pt. 8, *Vest v. Cobb*, 138 W. Va. 660, 76 S.E.2d 885 (1953)." Syl. Pt. 1, *Sheena H.*

---

[5] As in the instant case, in *Quicken Loans I* Quicken Loans's violation of W. Va. Code §31-17-8(m)(8) had been found to be negligent, not willful.

11

*for Russell H. v. Amfire, LLC,* 235 W.Va. 132, 772 S.E.2d 317 (2015). More specifically, and of particular relevance to this case, we have held that "'[w]here a particular construction of a statute would result in an absurdity, some other reasonable construction, which will not produce such absurdity, will be made.' Syl. Pt. 2, *Newhart v. Pennybacker*, 120 W. Va. 774, 200 S.E. 350 (1938)." Syl. Pt. 3, *Sheena H.*

West Virginia Code §31-17-8(m)(8) is contained in Article 17, Section 8 of the WEST VIRGINIA RESIDENTIAL MORTGAGE LENDER, BROKER AND SERVICER ACT. W. Va. Code §§ 31-17-1 through -20 (2015). Article 17, Section 8 is entitled **Maximum interest rate on subordinate loans; prepayment rebate; maximum points, fees and charges; overriding of federal limitations; limitations on lien documents; prohibitions on primary and subordinate mortgage loans; civil remedy**; and consistent with the tenor of this title language, all of the Section 8 provisions fall within one or both of two categories, *restrictions* on mortgage lenders, brokers and servicers, and *protections* for borrowers. W.Va. Code §§ 31-17-8. Section 8(m)(8) falls within the former category: it is a restriction on a lender's ability to extend either a primary or subordinate loan which, in lay terms, puts the borrower "underwater" on his or her mortgage indebtedness. The Legislature enumerated only two defenses to this statutory restriction, both very specific. The first exception provides that

> [f]or purposes of this paragraph [§8(m)(8)], a broker or lender may rely upon a bona fide written appraisal of the property made by an independent third-party appraiser, duly licensed or certified by the West Virginia Real Estate Appraiser Licensing and Certification Board and prepared in

12

> compliance with the uniform standards of professional appraisal practice.

W.Va. Code § 31-17-8(m)(8). Pursuant to this statutory exception, Quicken Loans asserted as an affirmative defense that it had relied on a bona fide written appraisal made by an independent third-party appraiser, a claim the jury necessarily rejected.

The second exception was set forth in the statute as modified in the 2012 Regular Session of the West Virginia Legislature, and provides that

> commencing January 1, 2012, and continuing until January 1, 2015, this prohibition does not apply to any mortgage modification or refinancing loan made in participation with and in compliance with the federal Homes Affordable Modification Program, a part of the federal Making Home Affordable program, or any other mortgage modification or refinancing loan funded through any other federal or state program or litigation settlement….

W.Va. Code § 31-17-8(m)(8).[6] It is beyond dispute that this exception does not apply to Ms. Walters's loan, which was originated by Quicken Loans in 2007.

In short, Chapter 31, Article 17, Section 8 of the West Virginia Code as a whole, and § 31-17-8(m)(8) in particular, evidence a legislative intent to protect West Virginia homeowners from predatory lending in its various forms. The prohibition

---

[6] In Acts 2016, c. 157, the Legislature rewrote the proviso to delete the discrete time frame, which had expired.

contained in the appraisal statute is broad and the exceptions are narrowly drawn. We cannot find, and indeed cannot envision, any basis for concluding that the Legislature intended the statutory prohibition to extend only to second or subsequent loans where, as here, it specifically included primary loans within the statute's ambit. In this regard, primary and subordinate mortgage loans are defined in West Virginia Code §§ 31-17-1(m) & (o) respectively:

> (m) "Primary mortgage loan" means any loan primarily for personal, family or household use that is secured by a mortgage, deed of trust or other equivalent consensual security interest on a dwelling as defined in Section 103(w) of the Truth in Lending Act or residential real estate upon which is constructed or intended to be constructed a dwelling.
>
> * * *
>
> (o) "Subordinate mortgage loan" means any loan primarily for personal, family or household use that is secured by a mortgage, deed of trust or other equivalent consensual security interest on a dwelling as defined in Section 103(w) of the Truth in Lending Act or residential real estate upon which is constructed or intended to be constructed a dwelling *and is subject to the lien of one or more prior recorded mortgages or deeds of trust*.

W.Va. Code §§ 31-17-1(m) and (o) (emphasis added).

It is readily apparent that if, as Quicken Loans contends, the appraisal statute applies only to loans "… in a principal amount that, when added to the aggregate total of the outstanding principal balances of all other primary or subordinate mortgage

14

loans … exceeds the fair market value of the property…," then the statute applies *only* to subordinate mortgage loans, since by definition *only* subordinate mortgage loans are "subject to the lien of one or more prior recorded mortgages or deeds of trust." This would be an absurd result, as the statute expressly states, multiple times, that it applies, *inter alia*, to primary mortgage loans and primary mortgage loan transactions.

As noted above, "'[w]here a particular construction of a statute would result in an absurdity, some other reasonable construction, which will not produce such absurdity, will be made.' Syl. Pt. 2, *Newhart v. Pennybacker*, 120 W. Va. 774, 200 S.E. 350 (1938)." Syl. Pt. 3, *Sheena H.*

Accordingly, we hold that the provisions of West Virginia Code § 31-17-8(m)(8) apply to any primary or subordinate mortgage loan that exceeds the fair market value of the property at the time the loan is made, either singly, in the case of a first or consolidation mortgage loan, or in combination with any outstanding balances of any other existing loans.

## B.    *Award of Attorney fees and Costs*

The second issue presented for resolution is whether the trial court erred in finding Ms. Walters to be a prevailing party and awarding her $156,653.38 in attorney fees and costs. In this regard, we reiterate our longstanding rule that "'[T]he trial [court] … is vested with a wide discretion in determining the amount of … court costs and

15

counsel fees; and the trial [court's] … determination of such matters will not be disturbed upon appeal to this Court unless it clearly appears that [it] has abused [its] discretion.' Syl. Pt. 3, in part, *Bond v. Bond*, 144 W. Va. 478, 109 SE.2d 16 (1959)." Syl. Pt. 1, *Heldreth v. Rahimian*, 219 W. Va. 462, 637 S.E.2d 359 (2006). *See also Vanderbilt Mortg. and Fin., Inc. v. Cole*, 230 W. Va. 505, 515, 740 S.E.2d 562, 573 (2013) ("The controlling law places the decision of whether to award attorney fees squarely within the discretion of the circuit court.").

Quicken Loans contends that Ms. Walters did not substantially prevail at trial because (1) the jury found in her favor on only one of her two claims[7] and found that Quicken Loans had not acted with malice;[8] (2) the amount of damages awarded by the jury, $27,000.00, was far less than the amount sought by her counsel in closing argument;[9] and (3) the entire amount of the jury's award was offset by her earlier settlements with appraiser Riffe and Bank of America, thus "result[ing] in no success, no

---

[7] In her complaint, Ms. Walters asserted three claims against Quicken Loans: unconscionable inducement, illegal loan, and fraud. Ms. Walters dismissed the first claim prior to trial, believing it to be duplicative, and thereafter the jury found in her favor on the illegal loan claim and in Quicken Loans's favor on the fraud claim.

[8] As we held in *Quicken Loans I*, 230 W. Va. at 325-26, 737 S.E.2d at 659-60, a finding of malice was a condition precedent for Ms. Walters to seek the remedy of cancellation of the principal amount of the loan.

[9] In his closing argument, counsel did not suggest any specific amount of compensatory damages, focusing instead on the punitive damages sought – all of which became moot when the jury found in favor of Quicken Loans on the fraud claim.

additional monies, and no benefit to Walters," in Quicken Loans's view. In the alternative, Quicken Loans argues that in determining the amount of fees and costs to be awarded, the trial court failed to do a proper analysis utilizing the factors enumerated in our seminal decision in *Aetna Casualty & Surety Co. v. Pitrolo*, 176 W. Va. 190, 342 S.E.2d 156 (1986). Additionally, Quicken Loans contends that the court erred in failing to offset the *entire* amount of Ms. Walters's settlements with appraiser Riffe and BOA against the *entire* amount of Ms. Walters's combined compensatory award, including attorney fees and costs, thus depriving Quicken Loans of the benefit of $38,500.00 of the offset to which it was entitled.

In response, Ms. Walters argues that pursuant to West Virginia Code § 31-17-17(c), a violation of the appraisal statute entitles the borrower to file an action for damages, reasonable attorneys' fees and costs, and that the statute "does not dictate any level of success necessary for the consumer to recover attorney's fees...," although the result obtained in litigation is one factor to be considered. *Quicken Loans v. Brown*, 236 W. Va. 12, 30, 777 S.E.2d 581, 599 (2014) (*Quicken Loans II*). Further, Ms. Walters argues that "[b]ecause attorney's fees themselves are a measure of compensatory damages, Mrs. Walters's total damages award is not the $27,000.00 awarded by the jury, but the jury's award of actual damages combined with the court's award of attorneys (sic) fees for a total of $183,653.38 – a sum which is not entirely offset by Mrs. Walters's earlier settlements." As to the reasonableness of the fee award, Ms. Walters argues that the trial court did a thorough *Pitrolo* analysis and that the court's actions were well

17

within the broad ambit of its discretion. Finally, Ms. Walters argues that the trial court correctly handled the offset because claim against Quicken Loans giving rise to the award of fees and costs was "wholly separate and divisible" from the claims asserted against either appraiser Riffe or BOA.

We begin our discussion with West Virginia Code §31-17-17(c), which provides that "[a]ny residential mortgage loan transaction in violation of this article shall be subject to an action, which may be brought in a circuit court having jurisdiction, by the borrower seeking *damages, reasonable attorneys fees and costs*." (Emphasis added). As we explained in *Heldreth*, a case involving the fee-shifting provision in the West Virginia Human Rights Act, West Virginia Code §5-11-13(c) (1998), such provisions provide "the economic incentive … to attract competent counsel for the purpose of enforcing … laws that serve to protect the interests of this state's citizenry." *Heldreth,* 219 W. Va. at 467, 637 SE.2d at 364 While acknowledging this general principle, Quicken Loans argues that fee shifting statutes come into play only where the fee applicant "was the prevailing party at trial, and for a party to 'prevail' at trial, he need not show success on every claim brought but he must demonstrate significant success on a significant claim." *Schartiger v. Land Use Corp*. 187 W. Va. 612, 616, 420 S.E.2d 883, 887 (1991). In this case, Quicken Loans claims, Ms. Walters cannot meet the *Schartiger* test because she succeeded on only one of the two causes of action that went to the jury; because the amount of the jury's damages award was only slightly more than the amount Quicken Loans had previously offered in settlement; and because the damages award was totally

offset by the Riffe/BOA settlements, effectively leaving Ms. Walter with nothing but a "hollow victory" on a "minor claim."

We disagree. First, as we observed in *Vanderbilt Mortgage & Finance, Inc. v. Cole,* 230 W. Va. 505, 516, 740 S.E.2d 562, 573 (2013), in construing the West Virginia Consumer Credit and Protection Act, "[n]either the [statute] nor our case law requires that [plaintiff] prevail on the majority of her claims in order to receive attorney fees." Additionally, although Quicken Loans recites the standard set forth in *Schartiger*, it completely ignores the Court's further explanation that "the trial court is to examine all of the facts as they relate to the 'prevailing party' standard. The most pertinent of these facts are those relating to settlement offers…." 187 W. Va. at 616, 420 S.E.2d at 887. The *Schartiger* court continued:

> The fee-shifting rules adopted by the legislature in the statute under consideration and enforced by this court are meant to cover two extreme cases as well as all of the cases in between. If a tort-feasor approaches his victim immediately after the tort and makes a reasonable offer that includes reasonable attorneys' fees up to the time of the offer, only to be rebuffed by a greedy victim or victim's lawyer, and the jury awards less than the tort-feasor originally offered for damages alone, then it would be an abuse of discretion for the trial court to award attorneys' fees to the plaintiff.
>
> On the other hand, if the tort-feasor chases down the plaintiff on the courthouse steps minutes before trial only to make an offer that might minimally cover the plaintiff's damages, but that would not cover plaintiff's attorneys' fees expended to that point, and the jury awards damages roughly equivalent to the tortfeasor's offer, then it would be an abuse of discretion for the trial *not* to award attorneys' fees to the plaintiff.

19

> Most cases do not fit either of these extremes but fall somewhere in between.

*Id.,* 187 W. Va. at 617, 420 S.E.2d at 888 (emphasis in original).

In reviewing the record in this case, we conclude that the circumstances herein are far closer to the second extreme example cited in *Schartiger* than to the first. This case was litigated for more than three years, and the circuit court's docket sheet contains 467 entries evidencing multiple pleadings, requests for discovery, briefs, responses and motions, as well as numerous depositions and hearings, and several court-led mediation sessions. Ms. Walters represents that Quicken Loans's sole offer of $25,000.00 was made approximately one week before trial commenced.[10] Pursuant to *Schartiger*, this offer cannot be deemed "reasonable" since, although it could be said to "minimally cover the plaintiff's damages…," it did not cover any fees and expenses incurred over the three-year course of the litigation, and the jury awarded more in damages than Quicken Loans had offered to pay, albeit not much more. *See Rice v. Mike Ferrell Ford*, 184 W. Va. 757, 762 n.7, 403 S.E.2d 774, 779 n.7 (1991) (recognizing that "as a practical matter," in many situations the amount of damages awarded on a statutory claim will be so small that few attorneys will pursue a client's case with diligence unless

---

[10] Quicken Loans stated in proceedings before the trial court that it had "offered to settle" the case some months before the trial, but did not clarify whether this was simply an expression of general willingness or a concrete monetary offer.

20

the amount of the fee is proportional to the work required, rather than to the amount involved).

But wait, says Quicken Loans, not only did Ms. Walters prevail on just one claim, but also the jury's award of damages was completely offset by the prior settlements with appraiser Riffe and BOA, meaning that Ms. Walters effectively received nothing. Again, we disagree. Ms. Walters's claim pursuant to the illegal loan provision of the West Virginia Residential Mortgage Lender, Broker and Servicer Act, West Virginia Code §31-17-8(m)(8) was not a "minor claim"; Quicken Loans's actions in originating a loan that far exceeded the fair market value of Ms. Walters's home *violated the law*. And Ms. Walters's victory was not a "hollow" one, as the jury's verdict not only awarded her damages but also gave rise to her claim for payment of costs and attorney fees – a sum that in its totality exceeds the amount of the Riffe/BOA settlements.

In consideration of all of these facts and circumstances, and acknowledging the trial court's familiarity with all of the "ins and outs" of this litigation, we cannot conclude that the court abused its discretion in finding that Ms. Walters was a prevailing party.

Next, Quicken Loans argues that the court did not do a full and fair analysis of Ms. Walters's fee petition as required under Syllabus Point 4 of *Aetna Casualty & Surety Co. v. Pitrolo*, 176 W. Va. 190, 342 S.E.2d 156 (1986):

21

> Where attorney's fees are sought against a third party, the test of what should be considered a reasonable fee is determined not solely by the fee arrangement between the attorney and his client. The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Syl. Pt. 4, *Pitrolo*. Quicken Loans further argues that the court did not make adequate findings and conclusions with respect to the propriety of the requested fees and costs, a condition precedent to meaningful appellate review.

Specifically, Quicken Loans complains that while the court held a *Pitrolo* hearing, it was not an evidentiary hearing, as Quicken Loans had requested; therefore Quicken Loans did not have an opportunity to contest the evidence submitted by Ms. Walters's counsel in support of the petition for costs and fees, and as a result many of the court's findings were based on incomplete evidence. In this regard, we do not understand Quicken Loans to be claiming that the rates charged by the attorneys and paralegals were unreasonable, that the work claimed wasn't actually performed, or that the hours in the

22

time records were inflated.[11]   Rather, Quicken Loans's attack on the time records submitted by Ms. Walters's counsel is that most of the time reflected in the records was incurred in the proceedings against Kirk Riffe and Bank of America, or incurred in pursuing the fraud claim on which Quicken Loans prevailed.

This Court has held that in order for a court to determine the reasonableness of a fee request, "… it must allow the parties to present evidence on their own behalf *and to test their opponents' evidence by cross-examination*, 'the greatest legal engine ever invented for the discovery of truth[.]'"   *Multiplex, Inc. v. Town of Clay*, 231 W. Va. 728, 738, 749 S.E.2d 621, 631 (2013) (emphasis supplied and citations omitted).  *Cf. In Re: John T., Michael T., Natalie T. and Clare T.*, 225 W. Va. 638, 645, 695 S.E.2d 868, 875 (2010) (case remanded to the circuit court to permit the parties to present evidence regarding costs and attorney fees); *Daily Gazette Co. v. Canady,* 175 W. Va. 249, 251, 332 S.E.2d 262, 264 (1985) (award of attorney fees requires notice and an opportunity to be heard).

We believe that this language in *Multiplex*, although not encompassed in a syllabus point, compels the conclusion that Quicken Loans was entitled to the evidentiary hearing it sought, and that the court erred in refusing to allow it.  Although it is not

---

[11] It should be noted that the time records submitted by Ms. Walters's attorneys were prepared contemporaneously, not after the fact.

readily apparent what factual evidence could be presented to rebut Ms. Walters's attorneys' fee records and affidavits, it is not for this Court to second-guess Quicken Loans's assertion that it was entitled, at the least, to test the records and affidavits through cross-examination.[12]

In light of our holding that this case must be remanded for an evidentiary hearing, we need not address Quicken Loans's claims that certain of the trial court's *Pitrolo* findings were factually unsupportable and/or based solely on Ms. Walters's evidence without consideration of Quicken Loans's evidence. However, inasmuch as the issue of offset will necessarily arise again on remand, we proceed to address the manner in which the trial court handled offset of the Riffe/BOA settlements.

In *Quicken Loans I*, 230 W. Va. at 332, 737 S.E.2d at 666, we wrote that "in general, fee-shifting statutes are compensatory and not punitive in nature…," for purposes of determining a compensatory-to-punitive damages ratio. Thereafter, in

---

[12] We are troubled by Quicken Loans's counsel's statement, at the outset of his argument at the *Pitrolo* hearing held on October 8, 2015, that "I think that I can be perhaps uncharacteristically brief with you this morning. I think that the papers that we had presented before you do a very nice job of squarely putting the matter before you." This language could be construed as an acknowledgement by Quicken Loans that the court could properly decide the fee issues without anything more than the information contained in the parties' written submissions. However, we do not read counsel's statement as a waiver of Quicken Loans's right to raise the evidentiary hearing issue on appeal.

*Quicken Loans, Inc. v. Brown*, 236 W. Va. 12, 777 S.E.2d 581 (2014) (*Quicken Loans II),* at syllabus point 3, we extended the reasoning underpinning *Quicken Loans I* and held that "[a]ttorney fees and costs awarded under West Virginia Code § 46A-5-104 (1994) of the West Virginia Consumer Credit and Protection Act are compensatory in nature and shall be subject to offset by the amount of any good faith settlements previously made with the plaintiff by other jointly liable parties." In our discussion of this issue, we cited our earlier holding in syllabus point 1 of *Burgess v. Porterfield*, 196 W. Va. 178, 469 S.E.2d 114 (1996) that "[d]efendants in a civil action against whom awards of compensatory and punitive damages are rendered are entitled to a reduction of the compensatory damages award, but not the punitive damage award, by the amount of any good faith settlements previously made with the plaintiff by other jointly liable parties." *Quicken Loans II*, 236 W. Va. at 44, 777 S.E.2d at 613. In this latter regard, the trial court, which had a birds-eye view of the entirety of this litigation, specifically found in its Order Granting Defendant Quicken Loans, Inc.'s Motion to Correct the Verdict that "the plaintiff suffered a single indivisible loss arising from the combined actions of Defendant Quicken Loans and the settling co-defendants, Bank of America and Kirk Riffe….," and further that "because all of plaintiff's damages flowed from the actions undertaken by all three (3) defendants herein, Defendant Quicken Loans is entitled to an offset as a matter of law." Ms. Walters has not assigned error to these rulings.

We believe our decision in *Quicken Loans II*, although specifically limited by its terms to fees and costs sought pursuant to W. Va. Code § 46A-5-104, was

grounded in law and logic that extend to the instant case, where Ms. Walters seeks an award of fees and costs under West Virginia Code § 31-17-17(c), another fee-shifting statute, for successfully prosecuting her claim against Quicken Loans under the appraisal statute, West Virginia Code §31-17-8(m)(8). Accordingly, we hold that attorney fees and costs awarded under West Virginia Code §31-17-17(c) are compensatory in nature and shall be subject to offset by the amount of any good faith settlements previously made with the plaintiff by other jointly liable parties.

We turn now to the application of our holding to the facts of this case, and conclude that the trial court erred in awarding only a partial offset of the Riffe/BOA settlement monies. The court fashioned what appears to be some sort of apples-to-apples methodology, offsetting the jury's damages award by that portion of settlements payable to the plaintiff or on her behalf, and offsetting the attorney fees award by that portion of the settlements payable to the attorneys – with the end result that Quicken Loans did not receive the offset benefit of $38,500.00 of the prior settlements. We can find nothing in the law to support this approach, as more than thirty years ago the Supreme Court of the United States held that an attorney fee award belongs to the client, not the attorney. *Evans v. Jeff D.*, 475 U.S. 717, 730-31 & n.19 (1986). *See also Heldreth*, 219 W. Va. at 368, 637 S.E.2d at 471 ("the fee-shifting statute at issue contemplates that the fee award belongs to the successful complainant."); *Farley v. Zapata Coal Co.*, 167 W. Va. 630, 639, 281 S.E.2d 238, 244 (1981) (purpose of a fee shifting statute is to make the plaintiff whole). This is entirely consistent with our cases holding that an award of attorney fees

26

and costs, where appropriate, is an element of compensatory damages for a prevailing party; the character of the award does not change depending on who cashes the check, which seems to have been an underlying assumption of the trial court in the instant case.

The correct procedure to be employed on remand, after an evidentiary hearing, is three-fold. First, the court will analyze Ms. Walters's costs and fees submission, in light of the parties' arguments and any evidence presented, to determine which entries cannot be fairly attributed to Ms. Walters's success on her illegal loan claim. In this regard, we acknowledge that the trial court did make findings as to the number of hours attributable solely to the claims against appraiser Riffe and solely to the claim against BOA;[13] however, the court made no findings as to the number of hours, if any, attributable solely to the fraud claim against Quicken Loans, on which Quicken Loans prevailed. Our case law requires this analysis. "The calculation of attorney's fees in a human rights action requires, as this Court has previously recognized, the exclusion of hours spent on unsuccessful claims." *Heldreth,* 219 W. Va. at 467, 637 S.E.2d at 364. *See also* Syl. Pt. 5, in part, *W. Va. Highlands Conservancy, Inc. v. W. Va. Div. of Envtl. Prot.*, 193 W. Va. 650, 458 S.E.2d 88 (1995) ("Apportionment of attorney's fees is

---

[13] In its order awarding fees and costs, the trial court concluded that 45.2 hours set forth in Ms. Walters's fee petition was attributed to matters related exclusively to appraiser Riffe, and 25.9 hours to matters related exclusively to Bank of America. These figures may or may not change after the court hears the evidence Quicken Loans wishes to present.

appropriate where some of the claims and efforts of the claimant were unsuccessful."). Second, the court will deduct these hours from the total hours, to arrive at the number of hours of work on which a fee award may properly be based. Third, the court will then offset the total amount of the prior settlements, $98,000.00, against the total compensatory damages, i.e., the sum of the jury's award of damages and the court' award of costs and fees.

## IV. CONCLUSION

We affirm the trial court's ruling with respect to the applicability of West Virginia Code § 31-17-8(m)(8) to a single primary mortgage loan, and affirm the court's ruling that Ms. Walters was a prevailing party and is thus entitled to an award of fees and costs. However, we reverse the court's award of fees and costs and remand this case for an evidentiary hearing, after which the court will reconsider its *Pitrolo* findings on the basis of all the evidence presented by the parties, determine an appropriate award of fees and costs, and thereafter offset the entire amount of the prior settlements against the entirety of Ms. Walters's compensatory damages, which include both the jury's award of damages and the court's award of fees and costs.

Affirmed in part; reversed in part;
and remanded.

28